(77 App. Div. 520.)

## ROBINSON v. CARPENTER.

(Supreme Court, Appellate Division, Third Department.   December 3, 1902.)

1. GIFTS—EVIDENCE.

> A mortgagee assigned a mortgage to his wife and daughter, and the wife died, leaving the daughter and a son her only heirs. No administration was had on the wife's estate; but some time after her death the son, who had had possession of the mortgage and had collected interest for his mother, delivered the mortgage to the daughter and directed the mortgagor to pay interest to her. Before the son's death the daughter promised to settle up with him with regard to the mortgage; but she did not do so, and on her death her administrator claimed that the son's interest had been given to the daughter. *Held*, such facts were insufficient to establish a gift.

Appeal from trial term.

Action by Hiram T. Robinson, as administrator of the estate of Lydia J. Robinson, deceased, against Johanna Carpenter, as administratrix of the estate of Charles E. Carpenter, deceased. From a judgment in favor of plaintiff, defendant appeals. Reversed.

John Carpenter owned a certain bond and mortgage against one Shoppmier for $12,000. As mortgagee therein he assigned it to his daughter, Lydia J. Robinson, and his wife, Lydia J. Carpenter, in June, 1879. The wife died in October, 1880, intestate, leaving as her only next of kin the said daughter, Lydia J. Robinson, and a son, Charles E. Carpenter. No administration was ever had upon her estate; but, had her interest in the mortgage been divided among her next of kin, the said Charles would have been entitled

to one-half thereof, being a one-fourth of the whole mortgage, and his sister, Mrs. Robinson, the other one-half, giving her three-fourths of the whole mortgage. Charles E. Carpenter died intestate in December, 1896, and the defendant herein is his administratrix. Mrs. Robinson died intestate on February 10, 1901, and the plaintiff is her administrator. The plaintiff claims that, some time in 1883, Charles.E. Carpenter by verbal assignment transferred all his interest in such mortgage to Mrs. Robinson, and then delivered to her the bond and mortgage, which at that time was in his possession. The defendant denies this, and claims that one-fourth thereof belonged to Charles E. Carpenter at the time of his death. The action is brought to obtain an adjudication that the whole of such bond and mortgage belongs to Mrs. Robinson's estate, and that the administratrix of Charles' estate should assign the same to her administrator. The trial judge decided that Mrs. Robinson, at the time of her death, owned the whole of such bond and mortgage, and that Charles E. Carpenter in 1883 had assigned his interest therein to her, and that the plaintiff, as administrator of Mrs. Robinson's estate, had the right to collect the amount still due upon such bond and mortgage, and to give a good discharge for the same. Judgment thereon was entered accordingly, and from such judgment this appeal is taken.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

E. C. Angle, for appellant.
John D. Miller, for respondent.

PARKER, P. J. The argument for the plaintiff in this case is substantially as follows: In 1879 the bond and mortgage in question became the property of Mrs. Robinson and her mother, Mrs. Carpenter. From that time down to 1880, when the mother died, Charles E. Carpenter, her son, received for her payments of interest on the mortgage, and indorsed them thereon. Afterwards, until March, 1883, he held the bond and mortgage, and received and indorsed the interest thereon, presumably in his own right as a successor to one-half of his mother's interest therein. In March, 1883, when the mortgagor came to pay him for that year, he stated that he did not own the mortgage; that it then belonged to Mrs. Robinson; and he then went to her house with the mortgagor, and that payment was made to her, instead of to him. Thereafter, until her death in 1901, all payments of interest and a considerable amount of principal were made to Mrs. Robinson without objection on his part. From these facts is deduced the conclusion that he had, at some time prior to March, 1883, assigned all his interest in such mortgage to her, and had delivered to her the possession thereof.

It is evident that this claim proceeds upon the theory that such transfer was a gift. There was concededly no written assignment. There is not the slightest proof of any consideration for such an assignment, nor of any agreement between them concerning the assignment. The claim simply is that whereas, for two years subsequent to the mother's death, Charles had possession of the bond and mortgage, yet in March, 1883, it was in Mrs. Robinson's possession, and he then stated that it was her property; hence he must have previously assigned his interest therein to her, and delivered into her possession the instrument itself as evidence of such gift. Without discussing whether such facts, if established, would be sufficient to justify such a conclusion, the trouble is that no such facts are proven. The only witness on the sub-

ject is the mortgagor. He distinctly states in his evidence that he cannot remember the year in which Charles said he could not take the money, as it belonged to Mrs. Robinson; but he is apparently quite certain that it was the first time he went to pay money after Mrs. Carpenter's death. He says:

"I am not sure what year it was that I went to pay to Mr. Carpenter, and he told me not to pay him. I can't just tell what year. That was the first time Mrs. Carpenter was dead. That first time I came and wanted to pay the money. Then Charley say: 'I can't take any money.' I have to pay to Mrs. Robinson. 'I have to pay it in there.'"

And again, when being asked if he did not tell the attorney, the day before, that Charles said he would divide with Mrs. Robinson, he says:

"I can't tell you. You was on the road, and I told you the first time I came he said I have to pay to Mrs. Robinson, and he go along with me, and I pay it there."

It is further clear that such transaction was not in 1883; for the witness says that the next year after that he paid more money to Mrs. Robinson at Mr. Thomson's office. Now on the bond is an indorsement of March 31, 1883, of $2,190, and an entry thereon that $10,000 is still unpaid, and that thereafter interest is to be paid at the rate of 5 per cent. This indorsement is signed by Mrs. Robinson; but the statement itself is evidently the work of a lawyer. It is clearly the time when the payment was made at Mr. Thomson's office, which, as the witness says, was the year after Charles went with him to Mrs. Robinson's.

According to the evidence, then, Charles did not, after his mother's death, keep the mortgage as his own. Clearly he did not thereafter receive more than one payment of interest thereon, and the weight of evidence is that on the first offer of interest after her death he declined to receive it, and took the mortgagor to Mrs. Robinson, who was then the only one who could rightfully receipt for it. This was but a correct recognition of the legal status of the matter as it then was. Prior to that time he had acted for his mother, who owned half the mortgage; but, she now being dead and no administrator having been appointed, Mrs. Robinson was clearly the only one to whom the payment should then be made. Clearly he did not own the mortgage. He never had owned it, and his statement to the effect that it was Mrs. Robinson's, and not his, by no means indicates that she had acquired any interest whatever from him. Such a statement, then made, and a delivery by him of the bond and mortgage over to her, is entirely consistent with his continued ownership of his share in the distribution of his mother's estate, including the mortgage so left by her. He gave it to her because, there being no administrator appointed, she was the only one entitled to hold it; and he said it was hers, and not his, because she owned one-half thereof, and he did not own, and never had owned, any part thereof. This is especially clear if, as Shoppmier says, it was the first payment after his mother's death. Yet the same inferences follow if he held it until he had got the interest due in 1881 thereon. Under these conditions, the inference which the plaintiff would draw from his statements and act cannot be tolerated.

Moreover, it is proven by the defendant's witnesses that on several

occasions after Mrs. Robinson had acquired this mortgage, and as recently as in 1895 or 1896, she had promised Charles to settle up about the "Shoppmier mortgage." Her language was: "We will settle it as soon as I feel able now." Again, on another occasion, he asked her as follows: "Don't you think that mortgage ought to be settled before something happens to one of us?" To which she replied: "I do." "Well," he says, "Why don't you?" She replied: "I intend to." There is other evidence on the part of the defendant, showing that Mrs. Robinson recognized her liability to settle with Charles about this mortgage, and so negativing the claim that he had assigned his interest therein to her.

The plaintiff seeks in this action to establish a gift from Charles to his sister of his interest in this mortgage. Not only is there an utter lack of evidence to prove such a gift, but there is strong evidence indicating that none such had ever been made. The familiar rule that claims against the estate of a deceased party must be established by clear and convincing proof controls this case against the plaintiff. Van Slooten v. Wheeler, 140 N. Y. 633, 35 N. E. 583. And particularly is this rule applicable where the effort is to establish an alleged gift. Tilford v. Bank, 31 App. Div. 565, 52 N. Y. Supp. 142.

Without discussing the other objections to which the appellant's counsel calls our attention, I conclude that this judgment must be reversed upon the ground that the evidence falls far short of establishing the plaintiff's claim.

Judgment reversed, and new trial granted; costs to abide event. All concur.